(C. D. 571)

E. H. Silberman Co. et al. *v.* United States

United States Customs Court, Third Division

(Decided December 12, 1941)

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiffs.

*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett* and *Alfred A. Taylor, Jr.,* special attorneys), for the defendant.

Before Cline and Keefe, Judges

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover the duty assessed by the collector at

the rate of 10 per centum ad valorem under paragraph 1555 of the Tariff Act of 1930 upon merchandise invoiced as " (Old cotton bagging) Cotton dryer felts," "Old cotton filter canvas," "Old cotton canvas," and "Old cotton rags." Four cases were consolidated and tried together. Only one of the cases involves old cotton dryer felts, namely, protest 925708–G (B). The plaintiff claims that the merchandise is free of duty under paragraph 1750. The pertinent parts of the provisions involved read as follows:

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1750. * * * paper stock, crude, of every description, including * * * rags, waste * * * and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

At the trial the plaintiff called as a witness Mr. E. H. Silberman, the president of the importing company. Counsel for the plaintiff announced that the merchandise in these cases is the same as that in *E. H. Silberman Paper Co.* v. *United States*, Abstract 31941, and also *E. H. Silberman Paper Co.* v. *United States*, Abstract 42986, and that he intended to move to incorporate the record in those cases into the record in these cases. Counsel for the defendant announced that an objection would be made to the incorporation of the record in the previous cases. Thereupon, the following testimony was introduced:

Q. What is the business of your company?—A. Dealers in paper stock, and various commodities for the paper mills.

Q. And are you the same person, Emanuel H. Silberman, who testified in the case of the *E. H. Silberman Paper Company* v. *United States*, protest 886215–G, etc., the subject of Abstract 42986, the record in which I show you?—A. Yes, sir.

Q. Have you at my request examined carefully the invoices and entries under the protests which are now up for hearing?—A. Yes, sir.

Q. And did you see the merchandise the subject of these protests when it was received here in Cleveland?—A. Yes, sir.

Q. And are you thoroughly familiar with the character and condition of this merchandise?—A. Yes, sir.

Q. Please state whether the merchandise covered by these protests now up for hearing is or is not the same in all material respects as that which was involved in this earlier case of the *Silberman Paper Company* v. *United States*, Abstract, 42986?—A. It is as close as could be possible in waste materials such as paper making rags.

Q. And was the merchandise the subject of these protests shipped to you by the same foreign shipper as the foreign shipper in the case of Abstract 42986?—A. Yes, sir.

Counsel for the plaintiff then moved to incorporate the record in *E. H. Silberman Paper Co.* v. *United States*, Abstract 42986, and counsel for the defendant made the following objection:

The Government objects to the incorporation of the record. First, the merchandise in the incorporated record is described on the invoice—incidentally the invoices are not present. It is described in that case as "Old cotton bagging". In one of the cases now before the Court the merchandise is described on the invoice as "cotton dryer felts"; in others, as "cotton filter canvas." The testimony

just given by Mr. Silberman with respect to similarity of the merchandise is entirely too general. He said the merchandise is similar as near as it is possible to be similar. In other words, merely because the appraiser returned, advisorily classified all the merchandise as waste, this witness testifies that this also being waste, it is similar. The Government contends that notwithstanding it may be waste, it may not all be paper stock. The merchandise therefore not being similar for classification purposes, the Government objects to the incorporation of the record.

The judge presiding at the trial reserved decision on the motion for the full division to which the case would be referred for decision.

The witness then testified that he had been in the paper business for 35 to 37 years; that he is a dealer in waste material of all kinds shipped to paper mills to be used in the manufacture of new paper, that he had visited the paper mills throughout the United States, with the exception of the west coast, and is familiar with the materials used in the manufacture of paper; that the chief use of the paper covered by the protests in this case is for the manufacture of bond paper; that the canvas is discarded canvas materials of various colors and thickness which had been used in various industrial plants as a filtering canvas; that after the cloth is used for some time it is torn and discarded as waste material; that the cotton dryer felt is the same type of cotton canvas except it is a little thicker; that it has been used as long belts in paper mills and when discarded it is sold for the same purpose as the other canvas; that 75 to 80 per centum of the merchandise covered by these protests was sold to paper manufacturers; that occasionally there are special markets for the merchandise and some of it is used as an underliner. The witness then was asked and answered the following question:

Q. Please state whether or not the use, or chief use of this merchandise was the same on and prior to June 17, 1930, that it is today, or was it different?—A. It has been used in paper making as long as I have been in business, which is over 35 years.

On cross-examination, the witness testified that the cotton dryer felts had been used in paper mills on machines for making paper but that after they were discarded they are sold to other paper mills, not for use on machines, but as material for making paper; that there was a special market for some of the larger-sized pieces of canvas, which were not decayed or torn, by one class of buyer as an interliner under canvas to support leather on saddles and bicycle seats; that he could sell only the larger pieces for that purpose; that there were about 50 or 60 per centum of large pieces in the shipments before the court.

On redirect examination the witness testified that his reference to 50 or 60 per centum of large pieces referred to dryer felts rather than to the old filter canvas; that the chief use of old filter canvas is for paper making purposes; that from 75 to 85 per centum of the canvas

is accumulated for that purpose; that there is a small per centum of large pieces in the filter canvas.

On recross-examination, the witness testified that whenever he had a demand for large pieces of canvas he segregated them from the bales. When asked if he segregated the large pieces in the bales in this case, he said that he could not say because in September, 1937, the market stopped and all of the goods went for paper making purposes.

At the request of the defendant, the cases were then transferred to New York, but, when the cases were called for at New York, they were submitted without further evidence. At that hearing counsel for the plaintiff called attention to his motion to incorporate the record in *E. H. Silberman Paper Co.* v. *United States*, Abstract 42986, but the court reserved decision thereon and did not pass on the motion.

All questions on incorporation of records were thoroughly reviewed in *United States* v. *Bosca, Reed, MacKinnon Co. et al.*, 24 C. C. P. A. (Customs) 364, T. D. 48829, and the court held that rule 25 of the United States Customs Court, which relates to the incorporation of records in pending cases, is applicable in cases where the parties in the pending suit were parties in the previous case and where the merchandise is substantially the same and the issues precisely the same. The court said:

Commerce, industry, agriculture, finance, and the revenue of the Government depend to a considerable extent upon the proper adjudication of customs cases, and it should be remembered that the rules of practice, procedure, and evidence applicable in such cases may, from necessity, differ in many respects from those prevailing in courts of general jurisdiction. See *United States* v. *Stone & Downer Co.*, 274 U. S., 225, 235.

It is obvious from what has been said that this court, although not expressly approving, never disapproved the rule of the United States Customs Court relative to the introduction of records in previous cases, *so long as that rule incorporated within it the right* of opposing counsel to reexamine or cross-examine any witness whose testimony appeared in the incorporated record.

The rule of the United States Customs Court here under consideration did not provide any such right. We think, therefore, that it should be construed as being applicable only in cases where the parties to the pending suit were parties in the previous case, and where the merchandise is substantially the same and the issues are precisely the same, as in the case at bar.

We do not intend to be understood as holding that rule 25, *supra*, is applicable where the party who objects to the introduction of a record in a previous case was not a party to the former suit. Although such a statement is not necessary to our conclusion in this case, it would seem that, in such case, the party who opposes the introduction of the record in the previous case should be afforded the opportunity to examine or cross-examine the witnesses whose testimony is incorporated in that record.

The court reviewed in detail other decisions relating to the incorporation of records. In a subsequent decision (*Wilber-Ellis Co.* v. *United States*, 26 C. C. P. A. (Customs) 403, C. A. D. 47) the court

held that where the issues in the two cases were not the same the record in a previous case covering the same parties and the same kind of merchandise was properly rejected on a motion for incorporation.

The issue in the instant case is the same as that in the case which plaintiff seeks to incorporate into the record in this case and the record shows that the merchandise is substantially the same insofar as one shipment of waste can be similar to another. Counsel for the defendant did not object to the incorporation of the record for the reason that the witness in the previous case was not called for cross-examination, no doubt because the witness in the previous case was on the witness stand when the motion for incorporation was made. The objection appears to be based on the statement of counsel that the merchandise covered by the record desired to be incorporated was described on that invoice as old cotton bagging whereas in the cases now before the court it is described on the invoices as cotton dryer felts and old cotton filter canvas. Incidentally we find that the words "Old cotton bagging" do appear on the invoice covered by protest 925708–G (B) in connection with the words "Cotton dryer felts," but the courts have held that the name under which merchandise may be entered is not controlling. In *Hawley & Letzerich et al.* v. *United States*, 19 C. C. P. A. (Customs) 47, 54, T. D. 44893, the court said:

It may be accepted as correct that the invoices show the merchandise as "Japanese wiping rags," "Jap wipers," or the like, but, as Government counsel concedes, the name under which the merchandise may be entered is not controlling as to its classification. That is so well settled in customs law as to require no citation of authority.

The record in the instant case meets all the contingencies suggested by the appellate court in *United States* v. *Bosca, Reed, MacKinnon Co. et al., supra*, to invoke the provisions of the present rules of the court (rule 23, as amended, T. D. 50336) and we sustain plaintiff's motion to incorporate the record in the decided case, exception being granted to counsel for the defendant.

We have examined the record incorporated, decided in *E. H. Silberman Paper Co.* v. *United States*, 4 Cust. Ct. 361, Abstract 42986, and find that the same witness, Mr. E. H. Silberman, testified substantially the same as he did in the instant case, so we deem it unnecessary to review his testimony in that case in detail.

In the case of *Hawley & Letzerich et al.* v. *United States, supra*, the court held that the words "paper stock" in paragraph 1651 of the Tariff Act of 1922, which is the predecessor to paragraph 1750 of the Tariff Act of 1930 and contains the same language, refers to the kind of materials the chief use of which, at the time of the enactment of the tariff act, was for making paper. The court made the same ruling

in *United States* v. *Belgam Corp. et al.*, 22 C. C. P. A. (Customs) 402, T. D. 47402, which is summarized in the syllabus as follows:

3. EO NOMINE DESIGNATION—COMMON MEANING DETERMINED AS OF DATE OF TARIFF ACT.

If there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the tariff act involved. The term "paper stock" is an *eo nomine* designation (citing *Hawley & Letzerich* case, *supra*), and the use of the rags here in question is determined as of the date of the enactment of the Tariff Act of 1922 and not as of the time of their importation. The phrase "used chiefly for paper making", in paragraph 1651, *held* not to relate back to the term "paper stock."

The plaintiff's witness was asked in the instant case what was the chief use of the merchandise like that herein involved on June 17, 1930 and he stated that "it has been used in paper making as long as I have been in the business, which is over 35 years." In the incorporated record he was asked to state the chief use of merchandise of the same class and kind as that therein involved and he said:

A. The chief use of this type of material is for paper making purposes, to be converted into bond papers for letter-heads and paper of that nature.

Q. For how long has that been true?—A. Ever since they discovered the art of paper making from cotton materials of all kinds.

This testimony, which was uncontradicted, proves conclusively that the type of material covered by the protests herein involved was chiefly used for paper making at and prior to the enactment of the Tariff Act of 1930 and subsequently thereto and we so find. The evidence meets the test prescribed for establishing that merchandise is crude paper stock in *Hawley & Letzerich et al.* v. *United States, supra*, and *United States* v. *Belgam Corp. et al., supra*, and, on the authority of the decisions cited, we find that the merchandise involved in this case is crude paper stock and hold that it is free of duty under paragraph 1750 of the Tariff Act of 1930. The protests are sustained. Judgment will be entered in favor of the plaintiff.